**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**DENVER REGIONAL OFFICE**
**BYRON G. ROGERS FEDERAL BUILDING**
**1961 STOUT STREET, SUITE 1700**
**DENVER, COLORADO  80249-1961**



February 12, 2020

<u>Via ECF</u>
The Honorable Naomi Reice Buchwald
United States District Court for the
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

      Re:    *SEC v. Parker Petit, et al.*, 19-cv-10927 (NRB)

Dear Judge Buchwald:

      Plaintiff Securities and Exchange Commission ("SEC") writes under this Court's Individual Rule of Practice 2.B. in response to Defendant Michael Senken's ("Senken") February 7, 2020 letter regarding anticipated motions to dismiss under Rule 12(b)(6) and in the alternative to transfer this case to the Northern District of Georgia ("Letter").  The SEC believes such motions are unwarranted and would oppose them on at least the following grounds:

**1.**      **The SEC's Allegations**

      The SEC's Complaint alleges that Senken, along with defendants Parker Petit ("Petit") and William Taylor ("Taylor"), participated in an accounting fraud scheme at MiMedx Group, Inc. ("MiMedx") to inflate the company's reported revenue by improperly recognizing revenue from five of MiMedx's distributors.  ECF No. 1, Complaint, at ¶ 1.  The bulk of Senken's involvement in the fraud related to revenues from MiMedx's largest distributor, Distributor E, which was responsible for 56% of MiMedx's total reported revenue in 2013; 34% of total reported revenue in 2014; 24% of MiMedx's revenue in 2015; and a declining percentage thereafter.  ECF No. 1 at ¶ 135.  As alleged by the SEC, from the first quarter of 2013 through the third quarter of 2017, MiMedx improperly recognized revenue at the time it shipped products to Distributor E "because of a secret side arrangement between MiMedx and Distributor E, entered into by Petit and Taylor, with Senken's knowledge." *Id*. at ¶ 2.  This secret side

The Honorable Naomi Reice Buchwald
February 12, 2020
Page 2 of 4

arrangement materially altered the terms of MiMedx's relationship with Distributor E and "should have prevented MiMedx from recognizing revenue at shipment." *Id*. The SEC further alleged that "from 2016 through early 2018, to cover up their misconduct, Petit, Taylor, and Senken repeatedly lied to and withheld critical information from" those looking into allegations of improper revenue recognition practices. *Id*. at ¶ 8. The Complaint then details the Distributor E fraud over more than 40 paragraphs, including Senken's role in that fraud. *Id*. at ¶¶ 134-177. Senken's proclamation of innocence and claim that he was "kept in the dark" (Letter at 1) cannot be reconciled with the SEC's allegations nor Senken's invocation of his Fifth Amendment right against self-incrimination to the SEC's questions during its investigation.

      **A.**     **Allegations of Intent**

As Senken's letter notes, the SEC may allege intent "by alleging facts that (1) show the defendant had 'motive and opportunity' to commit fraud, or (2) constitute 'strong circumstantial evidence of conscious misbehavior or recklessness.'" Letter at 2. The SEC has alleged both.

Senken argues that a motive to increase profitability or keep a company viable is insufficient, by itself, to allege scienter (Letter at 2), but he elides the fact that courts "should not ignore such motives when considering the totality of factual circumstances that might potentially give rise to a strong inference of scienter." *In re Thornburg Mortg., Inc. Sec. Litig.*, 695 F. Supp. 2d, 1165, 1202 (D.N.M. 2010). Moreover, the SEC's motive evidence is bolstered by the Complaint's allegations that Senken's salary, bonus, and equity compensation were influenced by MiMedx's misstated revenue (ECF No. 1 at ¶ 264) and that Senken knew or was reckless in not knowing of the side agreement MiMedx entered into with Distributor E that should have prevented MiMedx from recognizing income upon shipment. ECF No. 1, at ¶¶ 2, 139, 144, 146, 161, 165, 166, 167. This includes multiple allegations of how Senken knew or was reckless in not knowing about the side agreement. *Id*. at ¶ 153 (Senken received emails from MiMedx's Reconciliation Group reflecting that Distributor E was only paying for product after it received a PO from the VA); ¶ 154 (Senken received certain Weekly Revenue tables reflecting Distributor E's payment practices); ¶ 156 (Senken was forwarded an email in 2013 that stated: "It looks like we tell them what to pay based on their weekly revenue? So our 75-80 days for payment is only a coincidence."); and ¶ 158 (Senken took no action with respect to this email or a similar report from a different controller three years later). Further, the Complaint alleges multiple actions by Senken in furtherance of the fraud, including signing management representation letters for annual audits and quarterly reviews from 2013 through 2017 (*id*. at ¶¶ 16, 276); signing certifications required by sections 302 and 906 of the Sarbanes-Oxley Act (*id*. at ¶ 25); and signing annual and quarterly reports (*id*.).

      **B.**     **Allegations of Other Essential Elements of the SEC's Claims are Adequately Pled.**

Senken's remaining qualms with the SEC's Complaint are unfounded. For example, Senken cites *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015) for the extraordinary proposition that "revenue figures are [nonactionable] statements of opinion reflecting accounting judgments…." (Letter at 2), but *Omnicare* does not support this claim.

Senken also claims that "[a]n alleged misrepresentation cannot be the 'sole basis' for a scheme liability claim" (Letter at 2), but ignores the United States Supreme Court's 2019 decision holding that dissemination of false or misleading information with the intent to defraud is sufficient to satisfy allegations under Sections 10(b)(5)(a) and (c) of the Exchange Act and Sections 17(a)(1) of the Securities Act.  *See Lorenzo v. SEC*, 139 S.Ct. 1094, 1101 (2019). Senken's remaining arguments are equally flawed.

**2.      The Court Should Decline to Transfer this Case From this District**

The Court should reject any request to transfer this case to another district. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought." The purpose of Section 1404(a) is "to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 394 (S.D.N.Y. 2006) (denying transfer where movant failed to meet its burden) (citations omitted).

Assuming the Northern District of Georgia is one in which the case "might have been brought," the court must nonetheless determine whether convenience and the interests of justice favor transfer. *Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 560 (S.D.N.Y. 2000). In making this determination, courts weighs several factors: (1) Plaintiff's choice of forum; (2) convenience of witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) convenience of parties; (5) the locus of operative facts; (6) the court's ability to compel attendance of unwilling witnesses; and (7) the relative means of the parties. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006). Courts also evaluate a forum's familiarity with the governing law and "trial efficiency and the interests of justice, based on the totality of the circumstances." *Saccoccio v. Crane*, 2007 WL 1334970, at *1 (S.D.N.Y. May 7, 2007).

As a general rule, however, the plaintiff's choice of forum - the first factor typically considered by a court weighing a motion to transfer - is entitled to deference, and defendant bears the burden of justifying transfer.  *See, e.g.*, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiffs' choice of forum should rarely be disturbed."); *Hershman v. UnumProvident Corp.*, 2007 WL 1217271, at *2 (S.D.N.Y. Apr. 5, 2007) ("The plaintiff's choice is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer.") (citations omitted). Indeed, "[t]he SEC's choice of forum is entitled to that level of deference to which a plaintiff's choice of forum is ordinarily entitled." *SEC v. KPMG, LLP*, 2003 WL 1842871, at *3 (S.D.N.Y. Apr. 9, 2003).

Here, Senken cannot meet this burden, especially with a parallel criminal prosecution pending in this district.

        Respectfully submitted,

        SECURITIES AND EXCHANGE COMMISSION

By:   */s/ Stephen C. McKenna*
       Stephen C. McKenna
       Mark L. Williams
       Securities and Exchange Commission
       1961 Stout Street, Suite 1700
       Denver, CO 80294
       (303) 844-1000
       mckennas@sec.gov
       williamsml@sec.gov

cc: Counsel of record (by ECF)