**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SECURITIES AND EXCHANGE COMMISSION,

              Plaintiff,

  - against -                               No. 19 Civ. 10927 (NRB)

MIMEDX GROUP, INC.,
PARKER H. PETIT,
WILLIAM C. TAYLOR,
MICHAEL J. SENKEN,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


# THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION FOR A STAY OF THE CIVIL ACTION


                                         GEOFFREY S. BERMAN
                                         United States Attorney for the
                                         Southern District of New York
                                         Attorney for the United States
                                         of America.

Edward Imperatore
Scott Hartman
Daniel Tracer
Drew Skinner
Assistant United States Attorneys
*- Of Counsel -*

**Table of Contents**

BACKGROUND ................................................................................................................... 3

SCOPE OF THE REQUESTED STAY ............................................................................... 6

ARGUMENT ...................................................................................................................... 7

    A.    Applicable Law ..................................................................................................... 8

    B.    Discussion ........................................................................................................... 10

        1.    The Extent of Overlap ................................................................................ 10

        2.    Status of the Criminal Case ........................................................................ 11

        3.    The Plaintiff's Interests .............................................................................. 13

        4.    The Defendant's Interests ........................................................................... 13

        5.    The Public Interest ..................................................................................... 15

        6.    The Interests of the Courts ......................................................................... 20

CONCLUSION ................................................................................................................. 21

## Table of Authorities

*Baxter* v. *Palmigiano*,
    425 U.S. 308 (1976) ------------------------------------------------------------------15

*Bd. of Governors of the Federal Reserve System v. Pharaon*,
    140 F.R.D. 634 (S.D.N.Y. 1991) ------------------------------------------------17

*Campbell v. Eastland*,
    307 F.2d 478 (5th Cir. 1952)--------------------------------------------------17

*In re Par Pharm, Inc. Sec. Litig.*,
    133 F.R.D. 12 (S.D.N.Y. 1990)-------------------------------------------- 11, 12

*In re Worldcom, Inc. Securities Litig.*,
    02 CIV. 3288 (DLC), 2002 WL 31729501, (S.D.N.Y. Dec. 5, 2002) --------------------------14

*Kashi* v. *Gratsos*,
    790 F.2d 1050 (2d Cir. 1986) -------------------------------------------------- 8

*Landis* v. *N. Am. Co.*,
    299 U.S. 248 (1936) -------------------------------------------------------------- 9

*Louis Vuitton Malletier S.A.* v. *LY USA, Inc.*,
    676 F.3d 83 (2d Cir. 2012) ---------------------------------------------------9, 10

*N.Y. Power Auth. v. United States*,
    42 Fed. Cl. 795 (Fed. Cir. 1999)-------------------------------------------------- 9

*Parallel Civil and Criminal Proceedings*,
    129 F.R.D. 201 (S.D.N.Y. 1989) -------------------------------------------------10

*Parker v. Dawson*,
    No. 06 Civ. 6191 (JFB) (WDW), 2007 WL 2462677 (E.D.N.Y. Aug. 27, 2007)-------------10

*Phillip Morris Inc. v. Heinrich*,
    No. 95 Civ. 328 (LMM), 1996 WL 363156 (S.D.N.Y. June 28, 1996)-------------------------16

*S.E.C.* v. *Saad*,
    229 F.R.D. 90 (S.D.N.Y. 2006) (JSR) -------------------------------------------------18

*SEC v. Abraaj Inv. Mgmt. Ltd., et al.*,
    No. 19 Civ. 3244 (AJN), 2019 WL 6498282 (S.D.N.Y. Dec. 3, 2019)------------------------ 7

*SEC v. Beacon Hill Asset Management LLC*,
    No. 02 Civ. 8855 (LAK), 2003 WL 554618, (S.D.N.Y. Feb. 27, 2003)------------------- 12, 16

*SEC v. Blaszczak*,
    No. 17 Civ. 3919 (AJN), 2018 WL 301091 (S.D.N.Y. Jan. 3, 2018) ----------------------------- 7

*SEC* v. *Contorinis*,
    No. 09 Civ. 1043 (RJS), 2012 WL 512626, (S.D.N.Y. Feb. 3, 2012)--------------------------20

*SEC v. Dubovoy*,
    No. 15 Civ. 6076, ECF No. 244 (D.N.J. Jan. 29, 2016)--------------------------------- 8

*SEC v. Durante et al.*,
    No. 15 Civ. 9874 (RJS) (S.D.N.Y. Mar. 23, 2016) ------------------------------------- 8

*SEC v. Nicholas*,
    569 F. Supp. 2d 1065 (C.D. Cal. 2008)-------------------------------------------11, 16, 18

*SEC v. One or More Unknown Purchasers of Securities of Global Indus., Ltd.*,
    No. 11 Civ. 6500 (RA), 2012 WL 5505738 (S.D.N.Y. Nov. 9, 2012)------------------- 8, 13, 20

*SEC v. Shkreli, et al.*,
No. 15 Civ. 7175 (KAM), 2016 WL 1122029 (E.D.N.Y. Mar. 22, 2016) ------------- 8, 11, 13

*SEC v. Town of Ramapo, et al.*,
No. 16 Civ. 02779 (CS), ECF No. 69 (S.D.N.Y. July 15, 2016)---------------------------------- 8

*SEC* v. *Tuzman*,
No. 15 Civ. 7057 (AJN), ECF No. 43 (S.D.N.Y. March 1, 2016)-------------------------- passim

*SEC v. Wey*,
No. 15 Civ. 7116 (PKC) (S.D.N.Y. June 9, 2016) ------------------------------------------------ 8

*Tiffany & Co. Int'l v. Dhirim, Inc.*,
No. 09 Civ. 5845 (AKH), 2009 WL 2569190 (S.D.N.Y. Aug. 19, 2009) ------------------------ 9

*Trustees of Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc.*,
886 F. Supp. 1134, 1139 (S.D.N.Y. 1995) ----------------------------------------------------------12

*Twenty First Century Corp. v. La Bianca*,
801 F. Supp. 1007 (S.D.N.Y. 1992)-----------------------------------------------------------------20

*United States v. Downe*,
No. 92 Civ. 4092 (PKL), 1993 WL 22126, (S.D.N.Y. Jan. 26, 1993) ---------------------------13

*United States* v. *Kordel*,
397 U.S. 1 (1970) -----------------------------------------------------------------------------------11

*United States* v. *McCarthy*,
292 F. Supp. 937 (2d Cir. 1968) -------------------------------------------------------------------16

*United States v. One 1964 Cadillac Coupe DeVille*,
41 F.R.D. 352 (S.D.N.Y. 1966)--------------------------------------------------------------------10

*United States* v. *Percevault*,
490 F.2d 126 (2d Cir. 1974)------------------------------------------------------------------------16

*Volmar Distrib., Inc. v. New York Post Co.*,
152 F.R.D. 36 (S.D.N.Y. 1993)------------------------------------------------------------------9, 10

## PRELIMINARY STATEMENT

Pursuant to the Court's February 5, 2020 order, the United States of America, by and through the United States Attorney for the Southern District of New York ("the Government"), respectfully submits this memorandum in support of its application to stay all discovery in this action (the "Civil Action"), with the exception of party document discovery, as defined further below under "Scope of the Requested Stay," until the conclusion of the parallel criminal case, *United States v. Parker Petit and William Taylor*, 19 Cr. 850 (JSR) (the "Criminal Case"), which is scheduled for trial on July 7, 2020.

Federal courts frequently stay civil proceedings where they have the potential to affect a criminal case.   Here, all of the conduct that is at issue in the Criminal Case is also at issue in the Civil Action, meaning that common issues of law and fact exist.[1]   The stay sought by the Government will conserve this Court's time and resources, because the outcome of the Criminal Case is likely to have a significant impact on what issues are ultimately in dispute in the Civil Action.   Moreover, allowing discovery in this matter to proceed without restrictions risks giving Petit and Taylor the tools to improperly obtain impeachment material regarding the Government's witnesses, circumvent the criminal discovery rules, and improperly tailor their defenses in the Criminal Case.   That concern is particularly acute here, given that Taylor has asserted his Fifth Amendment rights in response to the complaint filed by the Securities and Exchange Commission ("SEC") and in sworn testimony taken by the SEC.   While the Government is respectful of Taylor's right not to incriminate himself, it remains the case that failing to impose a stay would allow him to obtain discovery regarding both the Criminal Case

---

[1] As discussed below, the Civil Action also implicates a narrow category of conduct that is not at issue in the Criminal Case.

and the Civil Action without being required to submit to reciprocal discovery demands in either proceeding.    As discussed below, a number of courts have stayed parallel SEC cases for this reason.

A stay is especially appropriate where, as here, the Government seeks only a limited stay tailored to protect the integrity of the Criminal Case.    Should the Court adopt the Government's proposed limited stay, motion practice could continue, and the parties would still be afforded the opportunity during the pendency of the Criminal Case to review more than 500,000 documents that would be produced by the SEC.    Moreover, the stay would be short in duration.    Judge Rakoff has scheduled trial in the criminal case to begin on July 7, 2020.    The Criminal Case will therefore be substantially concluded in approximately five months.    For these reasons, the stay sought by the Government will not prejudice defendant Michael Senken, the only defendant in this Civil Action who is not a defendant in Criminal Case.

Courts in this district frequently stay civil discovery when there is a parallel, indicted criminal prosecution, as there is here, even over a defendant's objection.    A proposed stay order is attached as Exhibit A.

As reflected in their pre-motion letters (ECF Nos. 43 - 45)[2] the individual defendants oppose the stay requested by the Government.[3]    Counsel for the SEC have represented to the Government that they take no position on the Government's request for a stay.

---

[2] Unless otherwise noted, "ECF No." refers to docket entries in the Civil Action.

[3] Defendant MiMedx Group, Inc. settled the allegations against it prior to the filing of the Civil Action.    *See* ECF Nos. 12, 18.

## BACKGROUND

The Civil Action and the parallel Criminal Case both arise out of allegations that senior executives of MiMedx Group, Inc. ("MiMedx") engaged in conduct designed to fraudulently manipulate the financial results of MiMedx, a publicly traded company of which Petit was the Chief Executive Officer, Taylor was the Chief Operating Office, and Senken was the Chief Financial Officer.   The factual allegations are detailed in Indictment 19 Cr. 850 (JSR) (the "Indictment") in the Criminal Case (attached hereto as Exhibit B) and in the SEC's complaint ("Compl.") (ECF No. 1).

As described in the Indictment, MiMedx was headquartered in Marietta, Georgia, and its securities traded under the symbol "MDXG" on the NASDAQ.   MiMedx sold regenerative biologic products, such as skin grafts and amniotic fluid, both directly to end users, such as public and private hospitals, and to various stocking distributors, which, in turn, resold the product to end users.

One of the most critical financial metrics disclosed in MiMedx's public filings with the SEC, and touted in MiMedx's accompanying press releases, was MiMedx's quarterly and annual sales revenue.   Under Generally Accepted Accounting Principles (GAAP) and SEC guidance, a company like MiMedx that engages in the sale of products through a distributor may recognize revenue upon transfer of the product to a distributor if certain requirements are satisfied, including persuasive evidence of an arrangement, that delivery has occurred or services have been rendered, the seller's price to the buyer is fixed or determinable, and collectability of payment is reasonably assured.   By 2015, however, it became increasingly difficult for MiMedx

to reach its revenue guidance due to decreased demand from certain distributors and the increasingly aggressive revenue targets that MiMedx had publicly announced.

Confronted with the difficulties faced by MiMedx in meeting its quarterly and annual revenue guidance by legitimate means, Petit and Taylor engaged in a fraudulent scheme to falsely recognize revenue upon the shipment of MiMedx product to four stocking distributors ("Distributor-1" through "Distributor-4") in the second through fourth quarters of 2015.   Petit and Taylor caused MiMedx to report fraudulently inflated revenue figures to the investing public in order to ensure that the reported figures fell within MiMedx's publicly announced revenue guidance, and to fraudulently convey to the investing public that MiMedx was accomplishing consistent growth quarter after quarter, as Petit and Taylor had falsely touted to the investing public.

Petit's and Taylor's fraudulent manipulation of MiMedx's revenue caused MiMedx to report materially inflated revenue in the second, third, and fourth quarters of 2015, and for the full year 2015.   In its 2015 10-K, MiMedx reported annual revenue that was fraudulently inflated by approximately $9.5 million, or approximately five percent.   Absent this fraudulent inflation of revenue, MiMedx would have missed both (1) its quarterly revenue guidance in the third and fourth quarters of 2015 and annual revenue guidance for 2015 and (2) analyst revenue consensus for the second through fourth quarters of 2015 and the full year 2015.

In addition to the conduct described above, all of which is alleged in the Indictment, the SEC's complaint contains additional allegations against Petit, Taylor and MiMedx CFO Michael Senken.   Specifically, the SEC's Complaint alleges that "[f]rom the first quarter of 2013 through the third quarter of 2017, MiMedx improperly recognized revenue at the time it shipped products to . . . its largest distributor," a distributor that is not referenced in the Indictment

("Distributor-5").   (Compl. ¶ 2).   The Complaint alleges that MiMedx's revenue recognition

with respect to Distributor-5 was improper because, "Petit and Taylor entered into a side

arrangement with [Distributor-5] that, contrary to the terms of the written agreement,

transformed it, in substance, into a consignment relationship in which [Distributor-5] was not

required to pay MiMedx for any product unless and until it received payment from the VA."

(Compl. ¶ 139).   The complaint also alleges that "Senken knew or was reckless in not knowing

and should have known about this agreement."   (Compl. ¶ 139).   Senken is not named in the

Indictment, nor does the SEC allege wrongdoing by him with respect to Distributors -1

through -4.

### Procedural Posture of the Criminal Case

On or about November 25, 2019, a grand jury sitting in this District returned the

Indictment, which charges Petit and Taylor in two counts:

Count 1:      conspiracy to (a) commit fraud in connection with the purchase
and sale of securities, (b) make false filings with the SEC, and (c)
improperly influence the conduct of audits, in violation of Title 18,
U.S. Code, Section 371; and

Count 2:      fraud in connection with the purchase and sale of securities, and
aiding and abetting, in violation of Title 15, U.S. Code, Sections
78j(b) and 78ff; Title 17, Code of Federal Regulations, Section
240.10b-5; and Title 18 U.S. Code, Section 2.

On November 26, 2019, Petit and Taylor surrendered to agents in the Criminal case and

were presented before a magistrate judge in the Northern District of Georgia.   Judge Rakoff has

scheduled a trial of the Criminal Case to begin on July 7, 2020.

On January 22, 2020, as ordered by Judge Rakoff, defendants Petit and Taylor filed their

pretrial motions in the Criminal Case.   Among other relief, Petit and Taylor moved for an order

compelling the Government to "produce all correspondence between the SEC and DOJ (the

5

USAO SDNY and any other DOJ components involved in this matter) and MiMedx, its agents, or counsel." (Criminal Case ECF No. 38-1, at 22). After receiving briefing from the Government and the SEC, Judge Rakoff issued an order denying the motion in its entirety and characterizing the defendants' discovery request as "a fishing expedition." (Criminal Case ECF No. 39, at 1).

## SCOPE OF THE REQUESTED STAY

The Government respectfully seeks a stay of discovery in this action with the exception that limited party document discovery may move forward. By the phrase "party document discovery," the Government refers strictly to the defendants' ability to obtain document discovery from the SEC. In order to avoid providing the defendants access to material in the Civil Case that is specifically precluded from discovery in the Criminal Case, the proposed stay order explicitly exempts from discovery "(a) Communications, written or oral, with the Government and/or other law enforcement agencies; (b) Communications, written or oral, with counsel for MiMedx Group, Inc. or its audit committee, including any factual presentations; (c) Documents obtained by the SEC from the Government and/or other law enforcement agencies; [and] (d) Transcripts of testimony and notes of or memoranda describing interviews with; written statements made or adopted in the course of an interview by; or correspondence concerning interviews of any person whom the Government designates to the SEC as an individual who may be called as a witness in the Criminal Case," as well as "disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i)."

For avoidance of doubt, all depositions, interrogatories, requests for admission, and issuance of subpoenas would be stayed, as would any other form of discovery that would create statements of any person whom the Government designates to the SEC who may be called as a

witness in the Criminal Case.

## ARGUMENT

The Government's request for a limited stay of discovery in should be granted.   The Government has a substantial interest in ensuring that this case does not interfere with the Criminal Case, and the balance of factors that courts analyze in considering motions of this type weigh heavily in favor of stay.   *First*, permitting the Civil Action to proceed would allow Petit and Taylor to make an end-run around the constraints imposed on discovery in criminal cases, obtain asymmetrical discovery, and otherwise risk prejudice to the Government in the Criminal Case.   *Second*, any prejudice to the defendants in the Civil Action from a stay would be limited, because the stay would be in effect only until the conclusion of the Criminal Case, which will be tried in July of this year. *Third*, because many of the issues presented by the Civil Action will be resolved in the Criminal Case, staying the Civil Action will preserve the Court's resources because many of the issues in the Civil Action will be resolved by the Criminal Case. Relatedly, the proposed stay would also avoid the unnecessary hardship that would fall on witnesses who, in the absence of a stay, would have to testify in separate civil and criminal proceedings that concern substantially the same facts.   The requested stay would be limited in duration, as trial in the Criminal Case is scheduled for July 7, 2020.

On similar facts, courts in this district and around the country have routinely stayed civil proceedings, even where defendants objected.   *See, e.g.*, *SEC v. Abraaj Inv. Mgmt. Ltd., et al.*, No. 19 Civ. 3244 (AJN), 2019 WL 6498282 (S.D.N.Y. Dec. 3, 2019) (granting motion to stay SEC proceedings pending the resolution of a parallel criminal case, over the defendant's objection); *SEC v. Blaszczak*, No. 17 Civ. 3919 (AJN), 2018 WL 301091 (S.D.N.Y. Jan. 3, 2018) (granting Government's motion to stay aspects of civil discovery that would constitute Jencks

Act material, over defendant's objection); *SEC* v. *Tuzman*, No. 15 Civ. 7057 (AJN), ECF No. 43 (S.D.N.Y. March 1, 2016); *SEC v. Town of Ramapo, et al.*, No. 16 Civ. 02779 (CS), ECF No. 69 (S.D.N.Y. July 15, 2016) (in a case in which not all civil defendants were charged criminally, staying production of statements of potential Government witnesses pending resolution of a parallel criminal prosecution); *SEC v. Wey*, No. 15 Civ. 7116 (PKC) (S.D.N.Y. June 9, 2016) (after Government's motion for partial stay of discovery, and over objection of multiple defendants, implementing full stay of discovery, with the exception that SEC would produce testimony transcripts that had been produced in criminal case); *SEC v. Durante et al.*, No. 15 Civ. 9874 (RJS) (S.D.N.Y. Mar. 23, 2016) (after Government's initial motion for partial stay of discovery, fully staying discovery and proceedings in the matter); *SEC v. Shkreli, et al.*, 15 Civ. 7175 (KAM), 2016 WL 1122029 (E.D.N.Y. Mar. 22, 2016) (granting, over defendants' opposition, a full stay); *SEC v. Dubovoy*, No. 15 Civ. 6076, ECF No. 244 (D.N.J. Jan. 29, 2016) (granting stay of discovery of civil case in light of parallel criminal action, notwithstanding "vigorous[] oppos[ition]" from certain of the civil defendants who were not a party to the criminal action); *SEC v. One or More Unknown Purchasers of Securities of Global Indus., Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738 (S.D.N.Y. Nov. 9, 2012) (granting Government request for full stay of discovery for six months over defendant's objection while criminal investigation was proceeding but prior to any criminal charge).

### A.    Applicable Law

This Court has the inherent power to stay civil proceedings in the interests of justice pending the completion of a parallel criminal trial.   *See Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action.") (internal citations and quotations omitted).

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"   *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).   In particular, courts in this district have recognized that where the same or similar legal issues are presented to two courts, staying the action in one of those forums promotes "judicial efficiency" and minimizes "the possibility of conflicts between different courts."   *Id.* (quoting *N.Y. Power Auth. v. United States*, 42 Fed. Cl. 795, 799 (Fed. Cir. 1999)); *see also Tiffany & Co. Int'l v. Dhirim, Inc.*, No. 09 Civ. 5845 (AKH), 2009 WL 2569190, at *1 (S.D.N.Y. Aug. 19, 2009) ("If cases involving substantially the same issues are filed in different district courts, generally the court hearing the second case should exercise its discretion to stay or dismiss its case in favor of the first-filed case.").

In evaluating whether to grant a stay of SEC enforcement cases in light of criminal prosecutions, courts in this Circuit consider:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interest of the court; and 6) the public interest.

*Tuzman*, No. 15 Civ. 7057 (AJN), ECF No. 43, at 2 (quoting *Louis Vuitton v. LY USA, Inc.*, 676 F.3d at 99).   "Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice."   *Volmar Distrib., Inc. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993).   But the factors "can do no more than act as a rough guide for the district court as it exercises its discretion" and do not replace the Court's "studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay

would work a hardship, inequity, or injustice to a party, the public or the court."   *Louis Vuitton*,
676 F.3d at 99.   The Court's "decision ultimately requires and must rest upon a particularized
inquiry into the circumstances of, and the competing interests in, the case."   *Id.* (quotation marks
omitted)

### B.     Discussion

Application of these factors here overwhelmingly weighs in favor of the stay sought by
the Government.

#### 1.     *The Extent of Overlap*

"The strongest case for granting a stay is where a party under criminal indictment is
required to defend a civil proceeding involving the same matter." *Volmar Distrib.*, 152 F.R.D. at
39 (citing Judge Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203
(S.D.N.Y. 1989) ("The most important factor at the threshold is the degree to which the civil
issues overlap with the criminal issues.")); *see also Parker v. Dawson*, No. 06 Civ. 6191 (JFB)
(WDW), 2007 WL 2462677, at *4 (E.D.N.Y. Aug. 27, 2007) (same); *United States v. One 1964
Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("[W]here both civil and criminal
proceedings arise out of the same or related transactions the government is ordinarily entitled to
a stay of all discovery in the civil case until disposition of the criminal matter").

Here, all of the facts at issue in the Criminal Case are also at issue in the Civil Action.
Indeed, as to Distributors-1 through -4, virtually all of the same documents, witnesses, and other
evidence that would be used by the SEC to prove its case would also be used to prove the
Government's criminal case.   It is true, as noted above, that the SEC's complaint makes
allegations with respect to Distributor-5, which is not at issue in the Criminal Case.   The
inclusion of allegations related to this distributor also has the effect of lengthening the time

period at issue in the SEC's complaint.   But the fact that the SEC has alleged a broader swath of

wrongful conduct generally has not stopped courts from staying discovery where there is

"substantial overlap between the civil and criminal proceedings."   *Tuzman*, No. 15 Civ. 7057

(AJN), ECF No. 43, at 2-3 (ordering a partial stay of discovery, over opposition, notwithstanding

that some fraudulent conduct charged in the civil case was not referenced in the criminal

indictment).   That is not surprising given that, whether the SEC case is broader than the

Criminal Case or vice-versa, the issue relevant to whether a stay is appropriate is the same:

whether it is likely that substantially the same set of facts would have to be proven twice in two

different proceedings, draining resources from the courts and from the Government, and

inconveniencing witnesses.   *See, e.g.*, *Shkreli*, 2016 WL 1122029, at *4; *Tuzman*, No. 15 Civ.

7057 (AJN), ECF No. 43, at 3.   Here, that is unambiguously the case.[4]

> ### 2.   *Status of the Criminal Case*

The return of the Indictment in the criminal action is also a factor that weighs in favor of a

stay. "[T]he strongest argument for granting a stay is where a party is under criminal indictment."

*Shkreli*, 2016 WL 1122029, at *5 (quotation and citation omitted).   Indeed, "[t]he weight of

authority in this Circuit indicates that courts will stay a civil proceeding when the criminal

investigation has ripened into an indictment."   *In re Par Pharm, Inc. Sec. Litig*., 133 F.R.D. 12,

---

[4] In their pre-motion letters, both Taylor and Senken make much of the fact that the Government
and the SEC brought proceedings in parallel.   *See* ECF Nos. 44, at 1-2; 43, at 3.   As a practical
matter, were the "SEC to forego civil enforcement proceedings in deference to criminal
prosecutions, numerous violations would become time-barred during the pendency of the
criminal case." *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008).   Moreover, as
the Supreme Court has explained, it would "stultify enforcement of federal law" to require an
administrative agency to choose between recommending a matter for criminal prosecution or
deferring civil proceedings. *United States v. Kordel*, 397 U.S. 1, 11 (1970).   In fact, such an
argument "overlooks the important purpose of the SEC to protect the integrity of the public
markets and ensure truthful disclosures."   *Nicholas*, 569 F. Supp. 2d at 1070.

13 (S.D.N.Y. 1990).   As the Court explained in *Trustees of Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc.*:

> A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved.

886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)

Not only has an indictment been returned against Petit and Taylor, but the criminal trial has been scheduled and will take place in less than five months.   In addition, the Government produced discovery in the Criminal Case approximately two months ago, and the defendants' pretrial motions have been resolved.   The fact that the Criminal Case is well under way and moving expeditiously towards a resolution is an important factor that weighs heavily in favor of a stay.   *See Tuzman*, No. 15 Civ. 7057 (AJN), ECF No. 43, at 3 (noting that an indictment normally weighs heavily in favor of a stay absent particular facts indicating that the criminal case may not be resolved expeditiously).

The fact that Senken, one of the defendants in the Civil Action, is not also a defendant in the Criminal Case does not undercut this rationale.   In the interest of protecting the integrity of criminal proceedings, courts in this district have granted discovery stays even where no criminal charges have yet been brought.   For example, in *SEC v. Beacon Hill Asset Management LLC*, Judge Kaplan granted a discovery stay pending the completion of a grand jury investigation. No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *2 (S.D.N.Y. Feb. 27, 2003).   Similarly, in *United States v. Downe*, Judge Leisure stayed the deposition of a cooperating witness, even though no defendants had yet been indicted.   *Downe*, No. 92 Civ. 4092 (PKL), 1993 WL 22126,

at *13 (S.D.N.Y. Jan. 26, 1993); *see also SEC v. One or More Unknown Purchasers of Securities of Glob. Industries, Ltd.*, No. 11 Civ. 6500 (RA), 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012) (noting that, "where the government is requesting a stay that is opposed by the defendant, . . . 'courts have granted stays of discovery to protect the integrity of pending criminal investigations, even when an indictment has not yet been returned" (quoting *Downe*)).   Here, the limited stay sought by the Government will allow Senken to obtain document discovery and file non-discovery motions, including a motion to dismiss, while the Criminal Case is pending.

Moreover, the issue under this prong of the analysis is not whether a particular person has or will be charged, but rather whether the criminal proceeding in favor of which the stay is sought is moving swiftly towards a conclusion.   Here it unquestionably is.

### 3.    *The Plaintiff's Interests*

The SEC takes no position on this Motion.   At a minimum, therefore, there can be no argument that there would be prejudice to the plaintiff by staying this action.   *See Shkreli*, 2016 WL 1122029, at *5 (citing cases).

### 4.    *The Defendant's Interests*

The defendants oppose a stay.   While all of the defendants profess a desire to expeditiously bring the Civil Action to a resolution, as a practical matter, granting the requested stay in this case will not appreciably prolong this case.   As an initial matter, even if the Government's stay application were denied, the Civil Action could not proceed to a conclusion without full discovery, which would take much longer than the approximately 150 days between now and the beginning of the criminal trial, the outcome of which is likely to have a significant impact on how this action proceeds with respect not only to Petit and Taylor but also, potentially, with respect to Senken.   *See In re Worldcom, Inc. Securities Litig.*, 02 CIV. 3288 (DLC), 2002

WL 31729501, at *8 (S.D.N.Y. Dec. 5, 2002) ("The conviction of a civil defendant as a result of the entry of a plea or following a trial can contribute significantly to the narrowing of issues in dispute in the overlapping civil cases and promote settlement of civil litigation not only by that defendant but also by co-defendants who do not face criminal charges.").

Moreover, the stay requested by the Government will allow all defendants to obtain documents relevant to this action.   In the Criminal Case, Petit and Taylor have already received over 500,000 documents and other materials as part of the Government's Rule 16 production, including all materials that the SEC obtained from third parties, many of which pertain to Distributor-5.[5]   If the stay proposed by the Government is entered, Senken will likewise receive all of these materials immediately.   All defendants will also receive transcripts of all testimonies taken in the SEC's investigation of individuals whom the Government has not identified as potential witnesses in the Criminal Case, which include, for example, witnesses related to Distributor-5.

The Government's proposed stay also would not prevent Senken, Petit, and Taylor from engaging in motion practice.   Indeed, as the Court is aware, Senken has already filed a pre-motion letter indicating his desire to move to dismiss the Civil Action as to him or to transfer the case to the Northern District of Georgia.   *See* ECF No. 49.   The limited stay sought by the Government will allow any motions to dismiss to be litigated and resolved.

Thus, contrary to what the defendants claim, the stay requested by the Government will

---

[5] The Government has reviewed all SEC testimony transcripts, interview memoranda, interview notes, and attorney proffers, to the extent they exist, for exculpatory material under *Brady v. Maryland*, and made appropriate disclosures to counsel for Petit and Taylor.   To the extent any such material in the possession of the SEC constitutes Jencks Act or impeachment material for any Government witness, the Government intends to produce it prior to the trial in the Criminal Case, at which time it will be made available to Senken as well.

not leave Senken or any of the other defendants to "sit idly by while the criminal case proceeds." ECF No 44, at 3.   Rather, Senken, Petit and Taylor will have access to the evidence they need to being preparing their defense to this action, including almost all of the evidence (including witness testimony) upon which the SEC would rely to prove its allegations related to Distributor-5.

Although Taylor opposes a stay, the stay proposed by the Government also has the potential to benefit him, given that he has asserted his Fifth Amendment rights in response to the SEC's complaint and in sworn testimony taken by the SEC before the complaint was filed.[6]   If discovery in this matter were allowed to proceed, and if the SEC were to notice Taylor's deposition, Taylor's refusal to testify would form the basis for the SEC to request an adverse inference against him at the trial of this matter.   *See Baxter* v. *Palmigiano*, 425 U.S. 308, 318 (1976) (Fifth Amendment does not forbid adverse inferences against parties to civil actions).

### 5.   *The Public Interest*

The public interest weighs heavily in favor of the stay proposed by the Government.   As an initial matter, there is a public interest in ensuring that members of the public who would serve as witnesses in this action and the Criminal Case not be put to the expense and inconvenience of being called multiple times to testify regarding these matters.   Allowing the Criminal Case to conclude before discovery proceeds in this matter serves this interest, because the outcome of the Criminal Case may render certain civil discovery unnecessary or streamline it such that witnesses may not be required to testify again.

More importantly, the Government and the public have an important interest in ensuring

---

[6] Like Taylor, Senken invoked his Fifth Amendment rights in sworn testimony before the SEC. Petit, however, did not invoke his Fifth Amendment rights in answering the complaint or in providing sworn testimony to the SEC.

that Petit and Taylor do not use civil discovery in this action to circumvent the well-founded restrictions that pertain to criminal discovery. Rule 16 of the Federal Rules of Criminal Procedure and Title 18, United States Code, Section 3500 provide that in criminal cases, the statements of Government witnesses shall not be the subject of discovery "until said witness has testified on direct examination" at trial.

The restrictions on criminal discovery that exist under the Federal Rules are designed to preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence or intimidate witnesses. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *United States v. McCarthy*, 292 F. Supp. 937, 942 (2d Cir. 1968) ("The claimed need to see such statements in advance in order to prepare to rebut them is little more than open notice of an intention to tailor testimony to fit the statement."); *S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008) (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment").

Consistent with these principles, courts repeatedly have recognized that a civil litigant should not be allowed to use civil discovery to avoid the restrictions that would otherwise pertain to a criminal defendant. *See S.E.C. v. Beacon Hill Asset Management LLC*, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in granting government's motion to stay, court noted: "The principal concern with respect to prejudicing the government's criminal

investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases."); *Phillip Morris Inc. v. Heinrich*, No. 95 Civ. 328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (granting stay motion because of government's justification that if "civil discovery is not stayed, the criminal investigation will be prejudiced, as the Defendants may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules."); *Bd. of Governors of the Federal Reserve System v. Pharaon*, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("'A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal trial'") (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1952)).

The prejudice to the Government (and therefore to the public) from allowing discovery to move forward in this case would be acute.   It appears from their pre-motion letters that neither Petit nor Taylor would accept any limitation at all upon their ability to take civil discovery, a position that, if endorsed by the Court, would eviscerate the careful balance struck by the Federal Rules of Criminal Procedure with regard to discovery.   And although Senken proposes more limited discovery, the categories of materials that he would have the parties exchange are precisely the type of information that the criminal discovery rules are designed to protect from disclosure.   For example, Senken's proposal that the parties be required to exchange "the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims," pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i), would essentially require the SEC to provide Petit and Taylor with a list of the witnesses that the Government would use to prove its case.   Similarly, Senken's request for the "production of documents relating to interactions between MiMedx Group, Inc. ("MiMedx") counsel and the SEC," would give Taylor

and Petit access to information that, only a week ago, Judge Rakoff determined they were not entitled to receive in the Criminal Case.   *See* Criminal Case ECF No. 39.

The public interest also weighs in favor of ensuring that any discovery that occurs in this matter is carried out in a manner that does not allow the defendants to obtain an unfair advantage over the government in either the criminal or the civil case.   That concern is particularly acute here given that, as noted, Taylor has asserted his Fifth Amendment rights in his answer to the SEC's complaint and in sworn testimony taken by the SEC before the complaint was filed. Given this fact, Taylor cannot credibly deny that he will assert his Fifth Amendment right if noticed for a deposition in this case, or perhaps even if he is required to respond to demands for answer and interrogatories.   While this is his right, Taylor should not be allowed to use his assertion of the Fifth Amendment to shield himself from participating in discovery in the Civil Action while nonetheless proceeding with asymmetrical discovery.   Moreover, given the significant overlap in issues between the Civil Action and the Criminal Case, Taylor is likely to seek to depose the Government's potential criminal trial witnesses, raising additional Fifth Amendment considerations.   As one district court noted, in the absence of stay in circumstances such as these, "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants."   *Nicholas*, 569 F. Supp. 2d at 1070.   Put simply, the taking of depositions in this case would be unfairly one-sided as the defendants could notice depositions without themselves being subjected to the same process.

Finally, the public's interest in maintaining the integrity of the criminal process is an issue of particular concern in this case.   In *Tuzman*, Judge Nathan outlined three principal ways

18

in which allowing criminal defendants access to broad civil discovery procedures could impair

the Government's efforts to enforce the criminal laws:

> First, broad disclosure of the essentials of the prosecution's case
> may lead to perjury and manufactured evidence.   Second,
> revelation of the identity of prospective witnesses may create the
> opportunity for intimidation.    Third, criminal defendants may
> unfairly surprise the prosecution at trial with information
> developed through [civil] discovery, while the self-incrimination
> privilege would effectively block any attempts by the Government
> to discover relevant evidence from the defendants.

*Tuzman*, No. 15 Civ. 7057 (AJN), ECF No. 43, at 3-4 (internal citations and quotations omitted).

These concerns are present in this case. In the absence of a stay, Petit and Taylor could

obtain and utilize the civil discovery process to, among other things, learn the identity of

potential witnesses and contact them to either suborn perjury or otherwise intimidate them. The

risk of obstructive conduct, while present in every case, it is pronounced here.    As discussed in

the Government's pre-motion letter, the Government has developed evidence that, during the

investigative phase of this case, Petit had inappropriate contact with multiple potential witnesses

in an apparent effort to dissuade them from providing information to investigators.    Allowing

Petit to use the civil discovery process to obtain a preview of the testimony that will be offered

by the Government's witnesses risks providing him the tools he needs to engage in further efforts

to influence witnesses, to fashion his testimony, or to tailor his defense around the witnesses'

accounts.[7]

---

[7] The Court should take little comfort from counsel's assertion that "Mr. Petit's counsel—not
Mr. Petit himself—would be appropriately conducting discovery in this matter."   ECF No. 45 at
2.   The point is not that Petit could use the discovery process itself to intimidate witnesses.
Rather, as explained above, the Government is concerned that if Petit were to learn the identities
of the Government's witnesses and the substance of their testimony prior to the disclosure of
Jencks Act material, he would be tempted to influence their accounts.   The Government has

### 6.    *The Interests of the Courts*

Considerations of judicial economy also weigh in favor of granting a stay.   Courts have a strong interest in the efficient resolution of both the criminal and civil cases.   Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the civil action.   *See SEC* v. *Contorinis*, No. 09 Civ. 1043 (RJS), 2012 WL 512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this district have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent civil proceeding"); *SEC* v. *One or More Unknown Purchasers of Secs. of Global Indus.*, 2012 U.S. Dist. LEXIS 162772, at *12 (S.D.N.Y. Nov. 9, 2012) ("[T]he Civil Case is likely to benefit to some extent from the Criminal Case no matter its outcome."); *Twenty First Century Corp. v. La Bianca*, 801 F. Supp. 1007, 1010-11 (S.D.N.Y. 1992) (recognizing judicial economy as a factor to be considered).   Because the outcome of the Criminal Case could directly affect the conduct, scope, and result of the civil proceeding, this factor favors the Government's application.

<div align="center">*          *          *</div>

In sum, and as set forth above: there is complete overlap between the parallel proceedings; an indictment has been returned in the Criminal Action and a trial is scheduled to take place in less than five months; there is no prejudice to the parties from the requested stay, which would be of very limited duration; the public interest would be served by a stay; and

---

little confidence that counsel could prevent such a scenario, since, during the investigative phase of this case, Petit's inappropriate contact with witnesses continued even after the Government warned Petit through counsel that such contacts should stop.   Given this history, counsel's characterization of the Government's witness tampering concerns as "vague, baseless, and false" is surprising.

<div align="center">20</div>

judicial economy is ensured from the requested stay, as the Criminal Case will resolve many of

the issues in the Civil Action. Therefore, the balance of factors overwhelmingly favors the

requested stay.

## CONCLUSION

For the reasons just given, the Government respectfully requests that its application for a

partial stay be granted.

Dated:  New York, New York
         February 18, 2020

<div style="margin-left:40%">

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By:     __/s/_____
        Edward Imperatore
        Scott Hartman
        Daniel Tracer
        Drew Skinner
        Assistant United States Attorneys
        One Saint Andrew's Plaza
        New York, New York 10007

</div>